[Civ. No. 7787. First Appellate District, Division Two.—July 2, 1931.]

B. F. KNOTT, Respondent, v. MEDINA No. 1 (an Unincorporated Association) et al., Appellants.

Robert L. McWilliams and G. C. Ringole for Appellants.

Norman A. Eisner for Respondent.

SPENCE, J.—In this action based upon the alleged conversion of personal property consisting of a certain oil-well drilling outfit and equipment, the jury rendered a verdict in favor of plaintiff for the sum of $8,250 and interest. From the judgment entered upon the verdict defendants appeal.

The defendants Medina No. 1 and Medina No. 2 are unincorporated associations and the remaining defendants are individuals associated together under those names. Defendants held an oil and gas lease on certain lands in Medina County, Texas, which lease was for a term ending August 11, 1926. It was dated August 11, 1921, and provided: "It is agreed that this lease shall remain in force for five years from this date and as long as oil or gas or either of them is produced from said land by the lessee." Although defendants carried on drilling operations, no oil or gas was produced during the term of the lease. On January 2, 1926, being several months prior to the expiration of the lease plaintiff entered into a contract with defendants relating to a well located on the property which well had been partially drilled for defendants by the Pacific Southwest Development Company. This agreement was evidenced by a lengthy letter signed by defendants, the main purpose being expressed in the last paragraph reading: "Our proposition to you as outlined in the preceding portions of this document is conditional that you shall furnish sufficient money to start and continue drilling operations in said well immediately and that there shall be no stoppage in said operations which could be attributed to lack of funds until said well is drilled to 3200 feet or commercial oil in paying quantities, . . . " In consideration for the assistance of plaintiff, the agreement provided among other things as follows:

"4th. And we further agree that you shall have the same rights and title to the drilling outfit, equipment and

casing in said well as are accorded to the Pacific Southwest Development Co. in the contract which we entered into with it, namely, that if you drill to 3200 feet, or any greater depth, without producing commercial oil in paying quantities then said outfit, equipment and casing shall belong to you so that you may salvage same and receive back the money you have expended in operations at the well, and in this connection will state that we are informed that said outfit and equipment, together with the casing when pulled from the well, should bring approximately eleven thousand dollars ($11,000.00) ;

''This paragraph 4 is subject, however, as reserved in said contract with the Pacific Southwest Development Co., to our right to the use of the outfit, equipment and casing to drill deeper in said well if you should abandon it at 3200 feet or at any greater depth, . . . ''

Plaintiff commenced drilling operations under the contract and ceased operations on or about August 5, 1926, being a few days before the expiration of the lease. Plaintiff claimed that he drilled the well to a depth exceeding 3,200 feet and although this was an issue between the parties in the trial court, appellants concede that there is ample evidence to show that a depth of 3,200 feet was reached. Defendants did not use the drilling outfit between the time of the cessation of operations by plaintiff and the expiration of the lease. Some time after the lease had expired defendants took possession of the drilling outfit and subsequently in December, 1926, started further drilling on the well, using this equipment. On the trial defendants offered to show that in the latter part of August, 1926, and after the expiration of the original lease, they secured a new lease on the property for a further period of five years, which lease by its terms ran from August 11, 1926. They also offered to show that about the same time they notified plaintiff of their election to continue work on the well. To the foregoing evidence offered by defendants, objections were made and sustained by the court.

On this appeal appellants contend that there was no conversion as they were entitled to use the drilling outfit during the life of the ''renewal lease'' and that the trial court erred in excluding evidence relating to said ''renewal lease'' and to appellants' election to use the outfit after

the expiration of the original lease. In our opinion this contention is without merit. Unless the contract gave appellants the right to use the drilling outfit after the expiration of the original lease, there was a conversion and the evidence offered was properly excluded. The respondent had drilled the well to the required depth and under the contract the drilling outfit became his property subject only to the right reserved by appellants. ▮ Although the contract did not prescribe in express terms the time within which appellants might exercise this reserved right, the agreement of the parties should be construed with reference to the circumstances under which it was made. (Civ. Code, sec. 1647.) At the time the parties made their agreement they had before them the original lease which was the source of their right to drill upon the premises. At that time the existing right of both appellants and respondent to drill the well was measured by that lease and terminated with it. The lease made no provision for extension or renewal and there was no evidence to show that at the time the contract was made the parties had arranged for or contemplated any new lease or ''renewal'' of the original lease. The intention of the parties at the time of contracting governs (Civ. Code, sec. 1636), and the only reasonable construction to place upon the contract is that appellants' reserved right to drill with respondent's equipment continued only so long as their right to drill on the premises under the existing lease had not terminated. That reserved right of appellants was not extended by obtaining a new lease at some time after the expiration of the original lease.

▮ Appellants further contend that the trial court erred in excluding evidence of the cost to appellants of the property in 1922. There was a sharp conflict in the expert testimony concerning the value of the property in 1926 and an effort was made on direct examination of one of the appellants to prove the price that appellants had paid for it in 1922. We do not deem it necessary to decide whether the court erred in excluding testimony relating to the purchase price paid four years previously. One of appellants' expert witnesses, after stating that he did not know the cost price of a Star rig in 1922, testified: ''I know, in fairness, to tell the truth about it, that in 1926 prices were inflated on account of the demand for oil country

equipment. Prices were quoted higher on new materials, and therefore carried a higher second-hand value. . . . And all second-hand oil well supplies are worth what you can get for them. . . . There is no established prices or established market." It was the value in 1926 which was in issue and from the foregoing testimony of appellants' witness, we conclude that the error, if any, in excluding evidence of the cost to appellants in 1922 was not prejudicial.

The judgment is affirmed.

Nourse, P. J., and Sturtevant, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on August 1, 1931, and a petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 31, 1931.